UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DOROTHY CROCKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOCIAL SECURITY )<br>ADMINISTRATION, )<br>)<br>Defendant. ) | CAUSE NO. 3:06-CV-0418 CAN |

**OPINION AND ORDER**

On July 3, 2006, Plaintiff Dorothy Crocker (Crocker) filed her complaint in this Court. On December 27, 2006, Crocker filed an opening brief in which she asks this Court to enter judgment in her favor or to remand this matter to the Commissioner. On March 9, 2007, Defendant Social Security Administration (SSA) filed its response brief. On April 6, 2007, Crocker filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.     PROCEDURE**

On December 16, 2002, Crocker filed her application for Disability Insurance Benefits (Tr 18). Crocker claims she is entitled to benefits pursuant to Titles II and XVI of the Social Security Act. See 42 U.S.C. §§ 416(i), 423, 1381a. On May 4, 2005, Crocker appeared at a hearing before an Administrative Law Judge (ALJ), who issued a denial of Crocker's claim (Tr. 18, 271-314). On August 12, 2005, the ALJ found Crocker not disabled (Tr. 25).

The ALJ found that Crocker had not engaged in substantial gainful activity since April 24, 2002 (Tr. 24).  The ALJ also addressed Crocker's reported medical conditions as well (Id.).[1]  The ALJ found that Crocker did not have any impairments or combination thereof that met one of the impairments in 20 C.F.R. app. 1, subpart P, § 404 (Id.).  The ALJ found that Crocker had the residual functional capacity (RFC) to perform the full range of light work (Id.).[2]  Therefore, Crocker could perform her past work, which meant Crocker was not disabled (Tr. 25).

Crocker appealed the ALJ's decision to the Appeals Council (Tr. 3).  The Appeals Council denied Crocker's request for review on April 28, 2006, and as a result, the ALJ's decision became the Commissioner's final decision (Id.). 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, Crocker filed a complaint in this Court seeking a review of the ALJ's decision.  This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II.    ANALYSIS

### A.    Facts

At the time of the ALJ's decision, Crocker was a 54 year old with a high school education (Tr. 18).  Her past employment experiences varied from the automobile industry to physical labor (Id.).  Crocker alleges that she has both physical and psychological limitations.  Specifically, Crocker alleges that she suffers from cervical spine syndrome, arthritic spurs on the spine, degenerative disc disease, chronic pain syndrome, TMJ, and bilateral neuro-foraminal

---

[1] Specifically, Crocker's discogenic and degenerative disorders of the back were considered "severe" based on 20 CFR § 404.1520(c).

[2] Light work involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds, and/or standing and walking for about six (6) hours during an eight (8) hour work day more than occasional conversations with co-workers, supervisors, or the public.  20 C.F.R. § 404.1567(b).

2

stenosis (Tr. 19). Additionally, she alleges depression that consists of mood swings that are present more days then not (Tr. 280-87). Crocker alleges that her mental conditions limit her desire to interact with people (Id.). Crocker alleges her problems allow her to do only light housework, such as intermittently washing dishes (Tr. 283-85). She has frequent muscle spasms and headaches forcing her to frequently lie down in her bed to take breaks (Tr. 280-87). Crocker had a history of documented treatments by various doctors due to an accident from several years ago (Tr. 19-20). Crocker recovered successfully and returned to work through aggressive physical therapy regimes and other non-surgical treatments (Id.). The relevant doctors' opinions in this case include: Dr. Michael J. Hartman ("Dr. Hartman"), Dr. David Koronkiewicz ("Dr. Koronkiewicz"), Dr. Phillip Budzenski ("Budzenski"), and Dr. Michael Kennedy ("Dr. Kennedy") (Tr. 20-21).

        1.      Dr. Hartman

In January 2001, Crocker was treated by Dr. Hartman a treating physician who found among other ailments, an extensive degenerative disc disease in the cervical spine and mild degenerative disc disease of the lumbosacral spine (Tr. 20). Although an MRI confirmed Dr. Hartman's diagnosis, Crocker returned to work with some restrictions (Tr. 131). In September 2001, Crocker was released to return to regular duties at her job (Id.). In November 2001, Crocker told Dr. Hartman that she wanted to return to work without any restrictions and no longer wished to seek disability benefits (Id.). Additionally, she stated that "all of her pain had gone away" (Id.).

2.      Dr. Koronkiewicz

Crocker saw Dr. Koronkiewicz who was one of her treating physicians on numerous occasions for her physical problems.[3] On April 17, 2001, Crocker went to Dr. Koronkiewicz complaining of lower back and neck pain (Tr. 170, 243). Dr. Koronkiewicz discussed pain management with Crocker and referred her to Dr. Poovendran who treated her with epidural shots that helped alleviate the pain and allowed her to return to work (Tr. 174-75). However, Crocker's ailments returned and Dr. Koronkiewicz referred her to other doctors to inquire if anything more could be done perhaps through surgery (Tr. 178-82, 244). The consensus of the doctors'opinions, including Dr. Koronkiewicz's, was that nothing could be done surgically to help improve Crocker's condition (Id.). Pain management was the continued regime to help treat Crocker's medical conditions (Tr. 243-44).

3.      Consulting Physicians

Drs. Budzenski and Kennedy were consultative physicians who performed internal medicine examinations in October 2003 and February 2003 respectively (Tr. 259-63, 212-16). During Dr. Budzenski's examination Crocker alleged pain and used a cane, but Dr. Budzenski noted that the cane was not used for movement (Tr. 259-63). She was not on any pain medications at the time. (Id.). Dr. Budzenski opined that Crocker had the ability to work eight (8) hours in a seated position, stand or walk thirty (30) minutes each hour, lift ten (10) pounds continuously and twenty (20) pounds occasionally. (Id.).[4] Dr. Kennedy also evaluated Crocker's

---

[3] Crocker did see other doctors as well; however, Dr. Koronkiewicz was the main practitioner in question and is the main source referenced by the ALJ in his decision.

[4] She had good motor strength and no limitations for hip flexion, extension, internal rotation, external rotation, abduction and adduction, knee flexion and extension and foot and ankle flexion and extension. (Id.)

4

neck and low back claims (Tr. 212-16).  He confirmed that Crocker had degenerative disc disease of the cervical and lumbar spine (Id.).  However, his overall diagnosis was consistent with Dr. Budzenski's as to Crocker's work abilities (Tr. 216).

The issues this Court must resolve are whether the ALJ erred by not giving controlling weight to Crocker's treating physicians, and if the ALJ improperly assessed her credibility.

### B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972).  Yet, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  While a reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, it will not simply rubber stamp the ALJ's decision without carefully reviewing the presented evidence.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Ultimately, the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  Also any of the ALJ's legal conclusions are reviewed *de novo*. Id.

### C. Crocker's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Crocker must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

5

>or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the Commissioner acknowledges the impairment. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

Crocker asserts two main arguments attacking the ALJ's assessment of her case. First, Crocker contends that the ALJ erred by not awarding controlling weight to the opinions of her

treating physician and improperly evaluated the consulting physicians. Second, Crocker argues that the ALJ failed to appropriately assess her credibility.

>        1.        The ALJ's determinations to not give controlling weight to Crocker's physician was not supported by substantial evidence.

Crocker argues that the ALJ failed to properly award controlling weight to Dr. Koronkiewicz's opinions and improperly evaluated the consulting physicians' opinions.

>                a.        Dr. Koronkiewicz

Crocker argues that the ALJ improperly discounted Dr. Koronkiewicz's ultimate opinion that Crocker was disabled as a legal opinion when in fact it was a medical opinion.  This Court construes Crocker's claim to be that the ALJ improperly "played doctor" and substituted his opinion for that of the physician.  Under Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001) the ALJ properly reserves the ultimate decision of a claimant's disability.  See 20 C.F.R. § 404.1520(e)(1) (explaining that statements by medical sources indicating disability or inability to work does not mean that the SSA will determine claimant disabled).  Dr. Koronkiewicz, who is an orthopedic specialist, opined that Crocker was "completely disabled from her neck and back and probably will not be able to be gainfully employed in the future" (Tr. 20).  The ALJ simply stated that "the opinion of this physician is a finding of fact reserved to the Commissioner" without further explanation (Id.). The ALJ did not "play doctor" because he did not substitute his opinion for Dr. Koronkiewicz's.  Instead, the ALJ simply restated the proposition from Dixon. Nonetheless, the ALJ still erred.  The ALJ cannot make such a dismissive conclusory statement about Dr. Koronkiewicz's opinion without providing some analysis.

An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). Treating physicians' opinions are generally given more weight because they are more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870. Valid reasons to deny controlling weight to a treating physician's opinions are when medical evidence is internally inconsistent or inconsistent with other objective evidence in the record. Dixon, 270 F.3d at 1177; Clifford, 227 F.3d at 870-71. When qualifying evidence in opposition to the treating physician presumption is introduced, the treating physician rule drops out and the evidence is just one more piece for the ALJ to weigh. Hofslien, 439 F.3d.at 377 (citations omitted). The ALJ failed to explain why, how, or even if Dr. Koronkiewicz's opinion was internally inconsistent or inconsistent with other evidence in the record.

In this case, the ALJ merely recited evidence from the record, some of which supported Dr. Koronkiewicz's opinions and some of which contradicted it. The ALJ referenced previous medical examinations dating back to 1993 that established Crocker's medical conditions of back pain (Tr. 19).[5] The ALJ then highlighted that continual follow-ups evidenced a similar prognoses with treatments of only ice and over the counter medications (Id.). The ALJ then recited several portions of Dr. Hartman's examinations, which described a similar prognosis consistent with earlier medical examinations (Tr. 20-21). The ALJ pointed to Dr. Hartman's notes that he initially allowed Crocker to return to work with restrictions, but that he eventually

---

[5] The ALJ noted that, in 1994, Crocker underwent successful physical therapy to help treat her condition and was able to lift up to thirty (30) pounds (Tr. 20). Further, the ALJ mentioned that her doctor released her back to work and her doctor was optimistic about avoiding surgery (Id.).

8

removed those restrictions at her request and permitted her full return to work (Tr. 20).  In particular, the ALJ noted Crocker's statement to Dr. Hartman's surprise that she was free of all pain and willing and able to return to work without further need to seek a claim of disability (Tr. 20).  All of which seems to contradict Koronkiewicz's opinions that Crocker was disabled.

On the other hand, after discussing Crocker's extensive medical history, the ALJ noted Dr. Koronkiewicz opined, supported by other doctors reports as well, that surgery would provide little benefit and her continued pain would decrease her ability to physically function (Id.; Tr. 244).  Further, Dr. Koronkiewicz suggested pain management to help Crocker's condition (Id.).  These more recent accounts of evidence seem to support Dr. Koronkiewicz's opinions that Crocker may be disabled.

Although the exact phrase "Dr. Koronkiewicz is not entitled to controlling weight" may not be essential, the ALJ must provide some reasoning.  An ALJ could always write a more elaborate decision and "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.1989).  However, the ALJ's opinion was well below par, due to its lack of structure and clarity.  There is ample evidence within the record, and even cited within the ALJ's opinion, to support his ultimate conclusion.  Yet, at best, this Court can only assume the ALJ found the evidence cited was not consistent with Dr. Koronkiewicz's opinions.  This Court cannot engage in such post-hoc analysis on the ALJ's behalf to support his conclusions.  Haynes, 416 F.3d at 626.  This Court will not substitute in analysis that is not present in the ALJ's opinion to reach a harmonious resolution, especially if the end result may change.  Thus, this Court cannot

conclude whether the ALJ's apparent discounting of controlling weight to Dr. Koronkiewicz was supported by substantial evidence.

      b.  <u>Consulting Physicians</u>

  Crocker also contends that the consulting physicians, Dr.s Budzenski and Kennedy, were improperly evaluated.  It appears to this Court that Crocker is suggesting that the ALJ erred because he did not give the consulting physicians' opinions controlling weight.  This argument is misplaced and provides little merit.  The treating physician rule only applies to those physicians who have treated the patient.  Consulting physicians do not qualify as treating physicians. <u>Hofslien</u>, 439 F.3d at 375-77.

  Additionally, Crocker appears to argue that the ALJ failed to assign more weight to opinions regarding what she could do with her impairments.  Essentially, Crocker appears to be asking this Court to re-weigh the evidence by giving more weight to certain doctors' opinions or parts of their opinions, which this Court will not do. <u>Haynes</u>, 416 F.3d at 626.  The ALJ provided a detailed description of both consulting doctors findings that he used to substantiate his ultimate findings in his RFC determinations (Tr. 23).  Further the ALJ pointed to both Dr.s Budzenski and Kennedy conclusions that Crocker could perform light work (Tr. 21).   Whatever weight was to be accorded to the consulting doctors' opinions was fully in the ALJ's discretion.  Therefore, the ALJ's evaluation of Dr.s Budzenski and Kennedy was reasonable.

  In summary, this Court finds that the ALJ's determination to not give controlling weight to Dr. Koronkiewicz's opinions regarding Crocker's physical limitations was not supported by substantial evidence.  But, this Court notes in passing that the ALJ's conclusions of the consulting physicians was reasonable.

> 2. <u>The ALJ's determination that Crocker was not credible was not supported by substantial evidence</u>.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003).  While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations are not credible.  <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2004) (quoting <u>Diaz v. Chater</u>, 55 F.3d 300, 308 (7th Cir. 1995)); <u>Golembiewski</u>, 322 F.3d at 915.  Further, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. <u>Zurawski v Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).  Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. <u>Golembiewski</u>, 322 F.3d at 915; <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is greater freedom to review the ALJ's decision. <u>Clifford</u>, 227 F.3d at 872.

Crocker contends that the ALJ's findings regarding her claims and credibility were erroneous.  This Court agrees and finds the ALJ's dismissal of Crocker's credibility is not supported by substantial evidence.  Although this Court acknowledges great deference to the ALJ's determinations, the ALJ's credibility determination will be affirmed provided the ALJ gives specific reasons that are supported by the record for his finding. <u>Skarbek v. Barnhart</u>, 390 F.3d 500, 505 (7th Cir. 2004).  The ALJ's conclusions on Crocker's credibility are sparse to say

11

the least.[6]  The ALJ only stated "the individual's allegations have been considered" or "the allegations are (or are not) credible."   This explanation, by itself, is not sufficient.  See Rice, 384 F.3d at 370.  There must be a specific discussion of why.

Furthermore, this Court cannot say this error was harmless.  Severe pain can be totally disabling.  See eg. Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004); Zurawski, 245 F.3d at 889.  There were repeated references in the record to Crocker's personal claims of pain.  For instance, Dr. Lockwitz, who was not mentioned in the ALJ's opinion, noted that Crocker had continued allegations of pain and that any surgery would provide little results (Tr. 196-97).  Further, Dr. Lockwitz stated that pain management seemed to be failing and the long term prognosis was not good.  Id.  Also, Crocker and her doctors made reoccurring references to her taking pain medication, such as epidural steroid injections (Tr. 20).  Despite all of the evidence in the record and the ALJ's recognition of Crocker's pain, the ALJ did not at all discuss her alleged pain.  Where the medical signs and findings reasonably support a claimant's complaints of pain, the ALJ cannot merely ignore the claimant's allegations.  Zurawski, 245 F.3d at 887-88.[7]

---

[6] This Court questions the relevancy as to why the ALJ mentions from one of the doctors notes that Crocker "may be a seeker of narcotics" without further explanation.  This Court cannot determine whetehr this fact was important to the issue of her credibility.  Perhaps she seeks medicinal aids for reasons outside of her alleged ailments, or maybe the ALJ was displaying an underlying bias against the claimant.  Either way, the ALJ's failure to expound more fully on this "nugget" of information is perplexing.  As it is mentioned, there must be a reason as to why it was slipped into the ALJ's opinion.  This Court advises that a more elaborate explanation be given upon remand.

[7] If an ALJ finds that an allegation of pain is not supported by the objective medical evidence in the record, and if the claimant still indicates that pain is a significant factor of his or her alleged disability, then the ALJ must a obtain detailed description of the claimant's daily activities by directing specific inquires about the pain and its effects on the claimant. Zurawski, 245 F.3d at 887; 20 C.F.R. § 404.1529(a)-(c).  Moreover, the ALJ must investigate all avenues presented that relate to pain, including prior work information, observations by treating physicians, observations by examining physicians, and observations by third parties. 20 C.F.R. § 404.1529(a)-(c).  The ALJ must consider factors of pain, precipitation and aggravating factors, dosage and effectiveness of pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities.  Id.

The ALJ acknowledges Crocker's claims of pain, but a simple passing acknowledgment is not sufficient to establish the logical bridge to properly discount her claims.

Moreover, the ALJ committed error because he appears to use the fact that Crocker did not seek mental health treatment, had been hospitalized for her alleged conditions, and had no medical evidence of physical or mental treatments for 2004 and no medical changes reported in 2005 to form negative inferences about Crocker's claims (Tr. 23). SSR 96-7p clearly states that while these factors, lack of treatment or medical evidence, can be taken into consideration by the ALJ, no negative inferences must be drawn from a failure to seek medical assistance without further explanation. An ALJ can elicit testimony by the claimant as to why there was a failure to seek treatment, which the ALJ did in this case at the hearing. (Id.).[8] However, the ALJ in his opinion proceeded to merely restate these explanations in passing. He did not explain whether he believed them to be true or not. Thus, this Court cannot tell if the ALJ drew negative inferences or not regarding Crocker's psychological condition because she did not seek treatment. If the ALJ was not satisfied with Crocker's explanations of her failure to seek medical assistance, then he should have explicitly stated it when he discounted them. As it stands, the ALJ said nothing.

An ALJ's opinion cannot stand without an adequate discussion of the issues. See Green, 51 F.3d at 101; Herron, 19 F.3d at 333. This Court stresses that it will not simply rubber stamp an ALJ's decision without carefully reviewing the record. Clifford, 227 F.3d at 869. Without more explanation, this Court cannot say the ALJ's opinion that Crocker was not credible is

---

[8] Crocker stated during the hearing that she had to stop seeing one doctor due to the doctor cancelling Medicaid as a payment option (Tr. 294). Furthermore, Crocker mentioned in the hearing that she was having a hard time finding other doctors that took Medicaid, at times she was uninsured, and was not aware of any free clinics in the area (Tr. 292-95).

13

supported by substantial evidence.  The ALJ must build the adequate logical bridge from the evidence to the conclusion, and this Court finds the bridge is still under construction. This Court is not suggesting that the ALJ's final determination that Crocker was not credible was incorrect, but only that much more elaboration is necessary on several issues.  Without such, this Court cannot discern at this point whether the ALJ's opinion was supported by substantial evidence or not.  Consequently, a remand is warranted.

### III. CONCLUSION

The ALJ's determination that Crocker's treating physician was not entitled to controlling weight was not supported by substantial evidence, and the ALJ's analysis of Crocker's credibility was not fully supported by substantial evidence.   As a result, this Court **GRANTS** Crocker's request and this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g). The clerk is instructed to term the case.

**SO ORDERED**.

Dated this 27th Day of July, 2007

 S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge